We will hear argument in Taylor v. Mooney Aircraft. Mr. Clark. Good morning, Your Honors. Matthew Clark for Plaintiff Accountant Ralph Taylor III. I'm going to reserve three minutes of rebuttal time. Granted. Okay. Your Honors, this appeal is, from our perspective, not asking for a novel interpretation or rule of law. What it's seeking is a determination that the choice of law rules in Pennsylvania, that the court has crystallized and clarified, especially in the last, you know, three years, I would say, should really be applied by the courts, as opposed to just recited at the outset of an opinion, and then, you know, the court engages in what's really just a counting of context in the case. This issue comes up in this case in regard to two components. One is the issue of debacage, whether different states' law... Is it debacage or depassage? I notice there's a cedillo on the C in some of the spelling Yeah, sometimes it's spelled that way, sometimes the other way. I guess I'll use debacage given that it's not clear, but this court has been clear that under Pennsylvania's choice of law, it is issue-specific and... Well, we've assumed it applies. I don't know that we can decide that it does apply under Pennsylvania law. Well, the court has determined that, I think, based on the Griffith case, which is where the Pennsylvania Supreme Court said that it's substituted a more flexible rule, which permits analysis of the policies and interests underlying the particular issue before the court. So if the court's looking at policies and interests in regard to a certain issue, then I think that does mean that different states' laws can apply to different issues in the same case. And I think in regard to what are clearly separate issues, such as in this case, one issue being under what state's law is a release to be interpreted, a release that was entered into before the litigation was ever filed, and which state's product liability law applies in terms of whether there is a statute of repose. I think those are separate and distinct issues, and I think that debacage can and should apply. Let me ask you a question. It seems that the briefs assume that... Obviously, product liability negligences are tort theories. Application of the release, everybody seems to assume that's also a tort theory. Isn't that a contract theory? I think it is a contract theory, and I think that decision turned on the fact that the releases were entered into in Georgia. So I think that was the most important factor because Georgia and the releasees were Georgia residents. Georgia's release interpretation law wanted to protect the release source from unintentionally releasing somebody that they never had a settlement with. But my point is, is that a contract theory or a tort theory? You know, applying your... Whatever you're calling it, a debacage. I think it is a contract theory because the thing that you're looking at there is where the release was entered into, and that's not really... You're looking at different contacts, really, when you get to a contract that's under a tort. But the debacage, or however you pronounce it, would apply whether it's a contract theory or whether... We assume it would apply. A contract theory or a tort theory. I mean, Hammersmith, our most recent case, was a contract claim. Right. Yes, yes. Debacage would apply even if it were a tort theory, the release interpretation issue. And one other point on that is even the Georgia courts treat the release interpretation issue as separate from the underlying issue of what tort law applies. They do. Lex Loci, I think it's contractus, for what law applies to the release, and Lex Loci, delecti, for what tort law applies. But even accepting your point, the Georgia courts also seem to apply their statute of limitations on foreign corporations that are sued by Georgia residents. Yes, Georgia would apply its statute of repose- Statute of repose, okay. Yes, without regard to what state the manufacturer is in. Well, doesn't that give you some insight into what the Georgia legislature was thinking of when it enacted the statute of repose? Because obviously, it would appear that this is a statutory scheme that the legislature realizes affects not only defendants, but plaintiffs. And the effect on Georgia residents is something that the Georgia legislature seemed willing to accept in view of the overall tort liability. And the fortuitous circumstance that this plane was in Pennsylvania in the first place, considering that and considering the way Georgia has interpreted its statute of repose, even under Depeche, should we not apply the Georgia statute of repose? Well, if we're using what the Georgia courts would do as evidence, then the Georgia courts themselves would not apply their statute of repose to this lawsuit. And the reason is, they stick to the strict Lex Loci Delecti rule, and they would apply Pennsylvania tort law to this action. Then why didn't you file this in Georgia? You say, this is a little parenthetical, but you say in response to the forum shopping allegation, that a Georgia court would not apply Georgia statute of repose to this action. So why didn't you file this in Georgia, as opposed to Pennsylvania? Well, Your Honors, part of what they're... Along with your maintenance charge, your complaint against the maintenance company. Sure. Part of what went into that is that we knew that all of the manufacturer companies did enough business in Pennsylvania that we would get jurisdiction over them there. The maintenance companies in Georgia, we didn't think we could get jurisdiction over them in Pennsylvania. But I'm asking why you didn't file this particular claim in Georgia. We weren't sure we would get jurisdiction over these non-Georgia manufacturers in Georgia. Even in Pennsylvania, it was a close issue because Mooney did file a jurisdictional challenge, which we were able to overcome. But we felt more confident about Pennsylvania in terms of getting jurisdiction. Personal jurisdiction. Right. And going back to whether the Georgia legislature considered the effects on its residents, yes, it did. And that 1978 Senate Promise Liability Study report we cited definitely shows that they considered the effects on the residents. But that wasn't the reason why they enacted the statute of propose. It was a compromise they made, knowing full well it would take away from the right of their residents to recover, a right they valued and did not want to take away from. But they wanted to benefit Georgia manufacturers. Well, doesn't the statute read like they want to benefit all manufacturers? If you look at the plain language of the statute, there is no distinction made between Georgia manufacturers and manufacturers from other parts of the country. No, that's true. And the statute, by its terms, would not distinguish where a manufacturer is from. And that's true. But when you're talking about the policy behind the law, that report makes clear the concern was with Georgia manufacturers. Well, the report stated that the first goal of the committee was to reduce the instability and unpredictability associated with product liability litigation on a national level. Yes. And it wasn't talking about a Georgia level or only vis-a-vis Georgia manufacturers or residents. Right. But what they also said was that Georgia could not enact any legislation that would deal with that problem. What they needed now was an interim measure to protect these small Georgia manufacturers of durable and capital goods from going out of business because they can't get coverage at all. But do we have to, when the statute's clear? I mean, you're asking us to then go beyond the statute to look at extraneous stuff. I don't agree with that respectfully. I don't think it's a statute interpretation question at all. What it is, is under the choice of law rules, you have to find what the policy behind that law was. And yes, the statute, by its terms, could apply, but... It seems to be a statement of policy, doesn't it? I don't think it is. I don't agree with that. And I think the 1978 report makes that clear. But I will say this, even if they were concerned with manufacturers on a national level, the choice of law rules made clear that that does not give them an interest in this litigation because those aren't Georgia contacts with the case. A state has to have contacts to have standing to assert an interest. And its only contact with this case is its residents. Georgia can't leapfrog over them to assert some desired benefit for Texas and New Jersey corporations. That doesn't give Georgia an interest in having this law apply. And I would say also that the Georgia Supreme Court made clear, too, that the policy behind a statute of repose, in general, is not the regulation of Georgia residents. They identified the policy as eliminating stale claims. They cited to the Clark case, which in turn cited to the Craven case. And the Craven case said, well, any limitations law, statute of limitations, statute of repose, is designed to eliminate stale claims. But in regard to a statute of repose, it is not because the claimants have been slumbering on their claims and not taking action. In their case, their right can be extinguished before they've done anything. So what those cases make clear is a statute of repose... Well, that's what happened here. I mean, Mooney sold the plane in 1987 and the crash occurred 13 years later. So they were already out of time. If Georgia's law applies, Mooney never sold that into Georgia and Mooney wasn't a Georgia manufacturer. And there's really no connection of Georgia's statute of repose to that airplane. Your first argument is that there's a false conflict here, that Pennsylvania has a strong interest, and Georgia has no interest. You'd be in an unprovided-for case and then you'd go to Lex Loci Delecti, right? But you would take it either way, wouldn't you? That's right. That's right. And that's the case. And the Gante's court in New Jersey was clear that Georgia can't really have an interest to deprive its residents of their claims for the benefit of out-of-state manufacturers. But I suppose as a product of New Jersey, there's a policy interest, and I say this very tongue-in-cheek, in New Jersey that hasn't been mentioned, and that is if there is a product, there is liability. Okay. But I think it's clear that Georgia has to get an interest through its only contacts, its residents. I can't see how the residents can somehow implicate the policy behind the statute of repose. It's not directed at them. We'll get you back in rebuttal. Thank you. Mr. Bartlett. Good morning, your honors. Good morning, counsel. Austan Bartlett on behalf of defendant Honeywell. Your honors, this court should affirm the district court's decision finding that Georgia's statute of repose applies, and that this is a false conflict scenario. I was a little bit unclear when I just heard plaintiff argue. First, he said that Georgia's statute of repose would apply to any manufacturer, irrespective of whether they were within Georgia's borders. And then later, it sounded like he was going to look behind the statute to the 1978 report. As Judge Chigaris, as you pointed out, the plain language is controlling. This court articulated that in Direct TV versus Pepe. And the plain and unambiguous language of this statute, which is set forth on page 26 of our brief, categorically bars strict liability claims against any manufacturer, irrespective of citizenship. The district court found correctly on page 10 of his decision below that there is no distinction made in that statute between Georgia and non-Georgia manufacturers. So inasmuch as plaintiff is urging this court to craft an exception, which is not provided for in that plain language, it should be rejected. Well, with the district court, we really didn't get into this with Mr. Clark, but of course, it's thoroughly brief. Separate and apart from whether the district court reached the right conclusion, he didn't analyze it correctly. He dealt with this litigation. He didn't examine the policies underlying the issue before the court at all. So when you said what he said at page 10, in my view, speaking only for myself, that was in the course of doing really an incorrect analysis. He didn't touch the interests underlying Pennsylvania's strict liability law or the statute of repose in Georgia, which he really must do. He mentioned the fortuity, but not a whole lot else. I think a couple of things I'd mention that first is the court has to remember, this is the second choice of law determination this district court made. The first time the court was called upon to decide the issue of release law, which was just talked about. And he did a very comprehensive job in that opinion. He did. And there's been some discussion here today about whether the release would be governed by contract or tort law. Plaintiff had advocated for Georgia's tort law to control the interpretation of that release. And section 145 of the restatement, which is the same section of the restatement relating to the statute of repose. And so the court engaged in an exhaustive analysis there. I agree with you, Judge Berry, that his later opinion with the statute of repose was not quite as detailed, but he did recognize that the statute of repose had a very broad purpose, which was implicated here because plaintiff has filed product liability claims more than 10 years after these products were first sold. The other reason I just wanted to briefly point out why the statute of repose is in subsection B2. And if you were going, and it's interwoven with the legislature's grant of the product liability claim for its citizen, which is in B1, it states that no action shall be commenced pursuant to this subsection. The point is, is if this court was going to restrict the statute of repose's thrust to resident manufacturers, you would be effectively restricting product liability claims for Georgia citizens to apparently small Georgia businesses, which is an absurd result and should be rejected. Your Honor brought up Georgia Supreme Court authorities, and this certainly bolsters, I think, the district court's opinion, and Love v. Whirlpool Corporation and Chrysler Corp. v. Batten. Two Georgia Supreme Court cases in 1994, the Georgia Supreme Court applied its against Whirlpool Corporation and Chrysler Corporation, Fortune 500 companies that are non-Georgia manufacturers. Now, plaintiff has urged this court today, as he did in his brief, to follow Ganti's, which is a New Jersey Supreme Court opinion. Obviously, Georgia's interpretation of its statute of repose is entitled to greater weight than a New Jersey Supreme Court decision. The Ganti's decision also conflicts with the plain language of the statute. And I think it's also important to point out that New Jersey had a significant interest in that case because there was a shaker machine that was manufactured for a chicken plant in New Jersey by a New Jersey defendant, which left the stream of commerce from New Jersey. So its product liability interests were implicated there. Conversely, in this case, the aircraft was purchased by Peter Sandek in Was the aircraft purchased in Nevada? Well, it was actually a Nevada corporation, but pilots frequently will set up other corporations to try to shield themselves from personal liability. You did a very good job of setting forth the context, but you don't get to the context, you get the interests, the governmental interests involved. And that's really where you have to show us that Georgia really is more interested in this case. Sure. Let me answer that, Your Honor. That's an excellent question. In the interest of Georgia, which I think are articulated in both of those Supreme Court decisions of Love and Chrysler Corporation, the statute was enacted in order to restrict open ended liability of manufacturers to stabilize product liability underwriting and to eliminate stale claims. Here, Georgia citizens have filed a claim against manufacturers for time tested products. These products were sold in 1987. And so the interest in restricting open ended liability of manufacturers, the interest in eliminating stale claims, and the interest in stabilizing product liability underwriting is implicated in this case. And Georgia's interest is also certainly implicated because as the Georgia Supreme Court recognized in Love versus Whirlpool, the legislature has an interest in granting, modifying, or abolishing the rights of its citizens. The statute of repose expresses a legislative judgment about modifying and abolishing the rights of its citizens to sue to encourage, to alleviate this national product liability problem, which you pointed out, Judge I mean, I'll play little devil's advocate. It's a very unjust result, isn't it, in terms of the victims here. And to alleviate the national product liability problem, the word the report used, you'd be down one case if this case is affirmed, correct? I mean, it's a very strong word. Your Honor, I agree this is a tragic accident and the law sometimes, these are difficult decisions, but the Georgia's legislature has spoken and the Georgia's legislature's decision to abolish claims brought by its citizens more than 10 years after the first sale of the product should be respected by this court under principles of federalism. I want to go back just briefly to touch, to respond to plaintiff's comment about this 1978 report. The court should have got there because the plain language, which is very broad and categorical, is unambiguous. And so the court shouldn't look behind the statute, but even if it did, Judge Berry, as you pointed out on page 17, the first problem identified was reducing the instability and unpredictability of the national product liability problem. And correspondingly, the first goal, the first proposal rather, was the statute of repose. In my brief time remaining, I just wanted to respond to plaintiff's dépassage, I believe it's dépassage, dismemberment in French, is that as the Eastern District of Pennsylvania recently recognized in Blaine, the court really has typically applied the dépassage concept to apply different laws to different claims in a case. Yes, different issues, but they tend to be different claims. I think Blaine stands alone. I think if you look at Griffith, it talks about a particular issue. If you look at Berg, it talks about a particular issue. Speaking only for myself, I wouldn't waste too much time on Blaine. I appreciate that, Your Honor. The point I'd like to leave the court with is that the district court's decision should be affirmed because the court correctly recognized that Pennsylvania's contact here was fortuitous. Plaintiff's word is entirely fortuitous, and that's on page 1054 of the record, volume four. Pennsylvania has no interest in applying its product's liability law to non-Pennsylvania citizens who fortuitously enter its borders. Conversely, Georgia has a much more significant relationship to the events in the parties, and its interest is implicated because the statute was designed to end the open-ended liability of manufacturers. For all these reasons, we respectfully request that the court affirm the district court's grant of summary judgment. Thank you. Thank you very much, Mr. Bartlett. Mr. Wessler? Thank you, Your Honors. Joe Wessler, representing the insurers for the former aircraft company, which is now insolvent and does not exist. Rather than talking about the laws in New Jersey, let's talk about the laws in Pennsylvania. There's a mirror case, and by that I mean an exact opposite case from the Pennsylvania Supreme Court, Kucinich v. McCrory. In that case, there were four domiciliaries of Georgia who died in a plane crash in Pennsylvania, and the court there said Georgia's only contact with the present, excuse me, as the situs of the accident is wholly fortuitous, whereas Pennsylvania, the place where the post-guest relationship was established or was intended to terminate, and the domicile for the aircraft's passengers, is the state with the most significant interest. You suggested that perhaps Judge Kelly did not do a balancing test, and I respectfully disagree with that. He looked at all the contacts with Georgia. We're not talking contacts, we're talking interests. I understand. There's a difference. There were domiciliaries of Georgia, the plaintiffs had a domiciliary of Georgia, the estate's being permitted in Georgia, the airplane was purchased in Georgia, the airplane was maintained in service in Georgia since 1998. Two defendants in the other case are Georgia residents and Georgia companies. The family home was in Georgia and the family was returning to Georgia. Frankly, Pennsylvania has no interest in this case, your honors. When Mr. Sandak took off, he never planned to end up in Pennsylvania. He was flying to New York. Talking about interests, let me read you this. It is well recognized that in governmental interest analysis, the state of the decedent's domicile has the strongest interest in its laws governing the claims of the decedent's estates. I didn't write that, they did. That was in their first summary judgment motion. They state that interest is very clear in Georgia when it benefited them. And in that same motion, they said Parker Hannaford, no longer in this case, spends only three pages of his memorandum of law attempting to convert the single fortuitous contact with Pennsylvania, the relevant location, into multiple contacts. Your honor, they can't have it both ways, your honors. I realize that there is such a thing as decapacity, it just doesn't apply in this case. Judge Kelly did an interest analysis and he found that Pennsylvania had none. Well, if depassage does apply, do you lose? I don't believe so, your honor. We agree there is such a thing as decapacity, I've never heard of it before. In the courts of Pennsylvania, I don't think we lose on that. Why? Because there is no interest of Pennsylvania's to enforce. And Pennsylvania just happened to be where the plane landed. What about Pennsylvania's interest in not having defective things fall out of the sky and kill people? Or defective products affect the general public of Pennsylvania as opposed to the user or the consumer of the product themselves? Well, every state has its own laws. Georgia's are different. Maybe Pennsylvania has an interest in protecting the general public of Pennsylvania, so that any defective product that enters the state, whether from the sky or any place else, it would have an interest in seeing that justice be done. Well, your honor, their briefs are full of discussions about this, about how people are imperiled on the ground in Pennsylvania or anywhere else that it's held. There is some general fear of airplanes hovers over the laws of the states. And you don't want us to be the first. That's right. Thank you. Thank you. Rebuttal. Your honor, there's one thing that I think is important here is that this is definitely not an issue of statutory interpretation. And as an example of that, if you go back to Griffith, the issue there was what could be recovered under their survival statute, their survival statute would have by its terms applied to any plaintiff, regardless of citizenship. So what was there was not an issue of statutory interpretation. It was an issue of what's the policy behind that law. And the reason they didn't allow lost future earnings was determined to be either to protect Colorado defendants or to prevent their courts from engaging in some kind of speculative calculation, difficult calculation, difficult. Okay. And the court determined, well, the airplane crash just didn't implicate those policies. On the flip side, if what was at issue was a law regulating the manner in which an aircraft is operated, of course, the location there can implicate that policy. This Georgia statute of repose, it's not about Georgia residents. It just isn't. And in terms of who can benefit from their products, liability law is without regard to their residents. And in terms of who can be denied recovery under the statute of repose is without regard to the residents of the manufacturers. It's about injuries occurring in Georgia. That's how Georgia courts would apply. If the product defect manifested in Georgia and the injuries occurred there, then the plaintiff, the plaintiffs, regardless of their citizenship would be entitled to utilize Georgia's products, liability law and the defendant manufacturers, regardless of their citizenships, would be entitled to invoke the statute of repose. So it's definitely not directed at Georgia residents. What it is about, for sure, is about Georgia manufacturers. What it may be about, and we don't concede this, but for purposes of argument, it may be about national manufacturers. But that's not a contact Georgia has with the case. Still, their policy, even if directed at New Jersey and Texas manufacturers, has to leapfrog over its residents to be applied as an interest. It's not a Georgia contact. And if that happens, then the language that the courts have used, that contacts are only relevant if they implicate the policies and interests of the state, then that language becomes meaningless. What would happen with a decision like that is then courts would just find a broad policy, skip over the contacts and say they're interested. You know, there could be a whole number of states then interested in this litigation. If you skip over the contacts, the contact is the residents of Georgia's plaintiffs, and that doesn't implicate the policy behind Georgia's statute of repose. In Gontes, the court in New Jersey found no interest in that Georgia had in applying a statute of repose. That's what it was cited for. Sure, it found New Jersey had an interest for various reasons, including the product that's manufactured there. But what we cited it for was the finding that Georgia had no interest. And I know I'm out of time, so thank you, Your Honors. Thank you very much. The case was well argued, and we'll take it under advisement. We'll now hear argument in